2010 OK CIV APP 3

**DR. Hamid "Harry" A. HAI, M.D., Plaintiff/Appellee,**

v.

**BAPTIST HEALTHCARE OF OKLAHOMA, INC. d/b/a Integris Bass Baptist Health Center, Inc., Integris Health Center, Inc., Jeffrey Tarrant and Rob Miller, Defendants/Appellants.**

**No. 106,328.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Dec. 11, 2009.

---

Stephen Jones, April M. Davis, Jones, Otjen & Davis, Enid, OK, for Plaintiff/Appellee.

Kevin D. Gordon, Harvey D. Ellis, Jr., Alison M. Howard, Cherish K. Ralls, Crowe & Dunlevy, Oklahoma City, OK, for Defendants/Appellants.

WM. C. HETHERINGTON, Judge.

¶ 1 Baptist Healthcare of Oklahoma, Inc., doing business as Integris Bass Baptist Health Center, Inc. (Bass Hospital), Integris Health, Inc., Jeffrey Tarrant,[1] and Rob Miller[2] (collectively, Defendants) appeal a trial court order staying discovery and ordering an evidentiary hearing on the issue of fraud in the inducement prior to either submitting the controversy with Dr. Hamid "Harry" A. Hai, M.D. (Plaintiff) to arbitration or considering dismissal for improper venue.[3] The case is ordered remanded for that hearing which must, under the applicable law, be confined in scope to the issues of sufficiency of Plaintiff's pleading in fraud and the evidentiary hearing as to fraud in the inducement of the arbitration clause contained in the employment agreement signed by the parties.

¶ 2 Plaintiff, a physician board certified in cardiology and internal medicine, participated in contract negotiations with Bass Hospital in late 2006, and in early 2007, entered into an agreement (the Agreement) for employment with an initial term from March 1, 2007, through February 28, 2008, and for subsequent twelve-month terms through January 31, 2012, unless modified by Bass Hospital. The Agreement provided for both a base salary and bonus compensation based upon fee-based collections.

¶ 3 On June 2, 2008, Plaintiff filed suit, alleging Bass Hospital had failed to provide an accounting for bonus compensation calculations despite requests, never paid him any bonus compensation, and refused, in con-

---

**1.** According to Defendants, Tarrant is President of Bass Hospital.

**2.** In his petition, Plaintiff identified Miller as "Assistant Administrator" of Bass Hospital.

**3.** Defendants do not address any issues relating to venue in their appeal.

formity with a common practice in the industry, to release information in response to requests from other potential employers about non-invasive medical procedures he had performed. He claimed he had been fraudulently induced by Bass Hospital to give up a prior medical practice by "false promises of guaranteed compensation that it never intended to pay."

¶4 Defendants moved to compel arbitration under the Oklahoma Uniform Arbitration Act (OUAA), 12 O.S.Supp.2006 §§ 1851–1881 and the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16 (1947), and to dismiss Plaintiff's petition for lack of venue pursuant to terms in a forum selection section of the Agreement. They claimed Oklahoma County is "the sole and exclusive venue for any litigation or other proceeding" between them. Defendants claimed Plaintiff's employment was terminated on May 19, 2008, for reasons unrelated to compensation.[4]

¶5 After Defendants filed their motion, Plaintiff filed a first amended petition alleging Defendants had hired a younger doctor with a different ethnic and religious background which demonstrated an "intent to discriminate broadly" against him and "set in motion the events" leading to his termination by disparaging his character. He claimed Defendants knew they owed bonus compensation after each of five quarters of employment, that he was owed approximately $490,000.00 in unpaid bonuses, and they knew he would not have moved to take up employment with them if they had not promised the bonus compensation. He alleged Defendants had no intent to pay the bonus compensation promised or render an accounting, and further evidenced their intent to defraud him by their inclusion of a void covenant not to compete in the Agreement. He claimed Defendants furthered their fraud by engaging in a scheme to fire employees who challenged their compensation rather than arbitrating those disputes and that they invoked the arbitration clause only after he sued for rescission of the Agreement based upon fraudulent inducement. He alleged

employees of Bass Hospital, including Tarrant and Miller, participated in or aided in fraud by originally acknowledging and making other representations that Plaintiff was entitled to his bonus but then refused to provide an accounting. Plaintiff "specifically seeks to rescind the contract and asks the trial court to declare it void *ab initio* as induced by fraud," asks for damages, and demands a jury trial on his fraud in the inducement claim.

¶6 In response to Defendants' motion, Plaintiff argued the trial judge should conduct an evidentiary hearing, citing *Shaffer v. Jeffery*, 1996 OK 47, ¶26, 915 P.2d 910, 917–18 in which the Court instructed that the issue of fraud in the inducement "must be resolved by the court prior to either compelling arbitration or dismissing the case," and must adjudicate that issue prior to granting any relief "based upon the validity of the arbitration clause."

¶7 In a second motion to compel arbitration, Defendants argued Plaintiff's fraud allegations were insufficient to challenge the validity of the arbitration clause by failing to meet the particularity required by 12 O.S. 2001 § 2009(B). They also moved for a protective order to stay discovery pending a determination of their motions to compel arbitration.

¶8 The trial court found, in pertinent part, that "[i]n the absence of fraud, the arbitration and venue clauses appear enforceable," but that "allegations of fraud in the inducement of the agreement must be resolved by evidentiary hearing prior to either compelling arbitration or dismissing the case for improper venue." All discovery was stayed, except proceedings relating to the allegations of fraud in the inducement. Subsequently, Defendants' motion for reconsideration of the order was denied. Their appeal followed.

### STANDARD OF REVIEW

¶9 Whether the parties entered into a valid enforceable agreement to arbi-

---

4. According to a May 19, 2008 letter appended as an exhibit to their motion, Plaintiff was terminated for cause because he "continued to engage in unprofessional conduct while [he was] under a corrective action plan for the same conduct," specifically that he "again engaged in harassing behavior toward an employee on Friday, April 25, 2008."

trate their claims presents a question of law reviewed by a *de novo* standard. *Rogers v. Dell Computer Corporation*, 2005 OK 51, 138 P.3d 826. Review of the trial court's legal rulings is made without deference to the lower court. *Gladstone v. Bartlesville Independent School District No. 30 (I–30)*, 2003 OK 30, 66 P.3d 442.

¶ 10 Whether the district court should conduct an evidentiary hearing relating to the existence of a valid enforceable arbitration agreement before referring the controversy to arbitration is a procedural question left to the discretion of the district court, and its ruling will not be disturbed on appeal in the absence of clear abuse of that discretion. *Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 2007 OK 12, 160 P.3d 936. An abuse of discretion occurs when the court bases its decision on an erroneous conclusion of law or when there is no rational basis in the evidence for a ruling. *Fent v. Oklahoma Natural Gas Company*, 2001 OK 35, 27 P.3d 477. "In order to determine whether there was an abuse of discretion, a review of the facts and the law is essential." *Board of Regents of University of Oklahoma v. National Collegiate Athletic Association*, 1977 OK 17, ¶ 3, 561 P.2d 499, 502.

### THE APPEAL

¶ 11 Defendants argue the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16 (1947) applies and controls the arbitrability of the parties' dispute because the transaction affects interstate commerce. They contend Plaintiff did not plead a cause for fraudulent inducement as to the arbitration clause with sufficient particularity under § 2009(B). Plaintiff argues the FAA does not apply.

¶ 12 "The issue as to the existence of an arbitration question presents a gateway question about whether the parties are bound by a given arbitration clause and raises a 'question of arbitrability' for a court to decide." *Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 2007 OK 12, ¶ 25, 160 P.3d 936, 945–946. The court determines whether the parties have a valid, enforceable agreement to arbitrate the dispute. *Rogers v. Dell Computer Corporation*, 2005 OK 51, ¶ 14, 138 P.3d at 830. "Arbitration under the [FAA] is a matter of consent, not coercion, and the parties are generally free to structure their arbitration agreements as they see fit." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488. Fraud in the inducement goes to the making of an agreement to arbitrate and the court is limited to "issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404–405, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967).

¶ 13 The FAA initially was enacted in 1925 to make arbitration agreements as enforceable as other contracts, "but not more so." *Prima*, 388 U.S. at 404, n. 12, 87 S.Ct. at 1806. The phrase "involving commerce" in § 2 of the FAA allows "the broadest permissible exercise" of the United States Congress's Commerce Clause power. *Citizens Bank v. Alafabco*, 539 U.S. 52, 56, 123 S.Ct. 2037, 2040, 156 L.Ed.2d 46 (2003). That same phrase includes a range of transactions wider than those actually "within the flow of interstate commerce" and is the functional equivalent of the term of art "affecting commerce." *Allied–Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273–274, 115 S.Ct. 834, 839, 130 L.Ed.2d 753 (1995). (Citations omitted.)

¶ 14 Defendants claim the Agreement evidences "a transaction involving commerce" within the meaning of 9 U.S.C. § 2 (1947). They assert federal substantive law under the FAA requires severance of the arbitration clause and any bench hearing must be limited to whether there was fraud in the inducement of the arbitration clause, not as to the entire Agreement. Plaintiff argues the OUAA and Oklahoma law control the arbitrability of the parties' dispute and the Agreement does not sufficiently affect interstate commerce to invoke the FAA. Applying the above-cited authority, we must disagree.

¶ 15 Plaintiff cites *Bruner v. Timberlane Manor Limited Partnership*, 2006 OK, 90,

155 P.3d 16, for the proposition that the parties' transaction was local and insufficiently affected interstate commerce. In *Bruner*, the Court found the FAA did not pre-empt Oklahoma's more specific Nursing Home Care Act, 63 O.S.2001 § 1–1901, et seq., that governed a nursing home resident's admissions contract. As the Court noted in *Bruner*, the Commerce Clause has expanded since initial adoption of the FAA. Further, in *Allied–Bruce Terminix* a "commerce in fact" test was adopted and "the contemplation-of-the-parties test" was rejected. No more specific statute like that in *Bruner* is cited here, and there is no dispute Plaintiff both was recruited for employment in another state and he has rendered medical services in yet a third state since his move to Oklahoma.

■ ¶ 16 We must reject Plaintiff's proposal that we engage in a balancing test to determine if his interstate activity, which he admits to but characterizes as "intermittent," and was insufficiently "heavy" to require application of the FAA.[5] The transaction between these parties in fact affects interstate commerce and implicates application of the FAA. *See Eddings, M.D. v. Southern Orthopaedic and Musculoskeletal Associates, P.A.*, 167 N.C.App. 469, 605 S.E.2d 680 (2004).

■ ¶ 17 Under the FAA, the question of the validity of the arbitration provision must be severed and considered separately. *Prima Paint Corporation v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Rogers*, 2005 OK 51, ¶ 14, 138 P.3d at 830. The United State Supreme Court when analyzing the law developed subsequent to *Prima*, explicitly declared it had "rejected the view that state law could bar enforcement of § 2, even in the context of state-law claims brought in state court." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445, 126 S.Ct. 1204, 1209, 163 L.Ed.2d 1038 (2006). The OUAA may not be applied here to negate application of the FAA, including application of substan-

tive law requiring severance of consideration of the arbitration provision, as opposed to consideration of the parties' entire agreement, in the face of allegations of fraud in the inducement.

■ ¶ 18 The contractual right to compel arbitration is treated as an affirmative defense by the FAA, and fraud in the inducement of a contract requiring arbitration must be resolved by the court prior to compelling arbitration. *Shaffer v. Jeffery*, 1996 OK 47, 915 P.2d 910. "A court must determine the existence of an arbitration agreement in the first instance." *Id.* 1996 OK 47, ¶ 23, 915 P.2d at 917. (Citation omitted.) An evidentiary hearing was appropriate and, when analyzing the arbitration provision, the court must treat the contract as valid. *Rogers*, 2005 OK 51, ¶ 14, 138 P.3d at 830. Under the circumstances presented, the trial court did not abuse its discretion or erroneously construe applicable law when it ordered an evidentiary hearing.

■ ¶ 19 Defendants next argue Plaintiff failed to plead fraudulent inducement as to the arbitration clause with the sufficient particularity required by 12 O.S.2001 § 2009(B). This statute requires only the degree of specificity necessary to enable the opposing party to prepare responsive pleadings and defenses and does not require a plaintiff to plead detailed evidentiary matters. *A–Plus Janitorial & Carpet Cleaning v. Employers' Workers' Compensation Assoc.*, 1997 OK 37, 936 P.2d 916.

■ ¶ 20 We decline Defendants' invitation to review in this appeal the sufficiency of Plaintiff's allegations of fraud in the inducement. Such a review would be premature. The sufficiency of the pleadings goes to the arbitration clause itself because it allegedly is part of a fraudulent scheme.[6] *See Moseley v. Electronic & Missile Facilities*, 374 U.S. 167, 83 S.Ct. 1815, 10 L.Ed.2d 818 (1963). Whether a claim is stated for fraudulent inducement of the arbitration clause is an

---

5. Admissions in appellate briefs are acceptable as material supplementing the record. *Deffenbaugh v. Hudson*, 1990 OK 37, 791 P.2d 84.

6. We likewise need not comment on the authorities Defendants cite which interpret what degree

of specificity is required under *federal* rules of civil procedure. As noted above, when analyzing the arbitration clause, the Agreement must be treated as valid, and the Agreement provides for application of Oklahoma's law.

issue properly addressed at the evidentiary hearing.

¶21 In ordering an evidentiary hearing, the trial court did not abuse its discretion or make an erroneous conclusion of law. The order is AFFIRMED, and the case is RE-MANDED for further proceedings consistent with this opinion.

BELL, P.J., and BUETTNER, J., concur.